J. W. Sykes and George F. Ort, Complainants and Plaintiffs in Error, v. Harrison Parker et al., Trustees of a Trust at Common Law, Defendants and Defendants in Error, impleading John Coe et al., Successors in Trust, Defendants and Defendants in Error.

Gen. No. 32,502.

300

Opinion filed November 7, 1928.

JUSTUS CHANCELLOR and GEORGE F. ORT, for plaintiffs in error.

EDWARD C. KESLER and FRANK E. DINGLE, for defendants in error; SEYMOUR STEDMAN, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

The complainants, J. W. Sykes and George F. Ort, filed their bill of complaint in the superior court, charging that on or about the 17th day of February, 1921, Harrison Parker, John Coe and Viggo E. Bird, being the trustees of a certain common-law trust, designated as "Co-Operators of America," otherwise known as "Co-Operative Society of America," entered into a certain agreement or arrangement with them by which they were to perform certain legal and promotional duties; charging further that no specific amount was agreed upon for the services but that the rate of employment be at approximately the same amount they had been paid for services rendered the same parties prior to February 17, 1921; charging further that by this agreement the trustees were not to become individually liable, but that whatever was done was to be

an express charge and lien against the property of the trust.

It appears that prior to the filing of this bill, certain of the trustees had been removed and the then trustees, Harrison Parker, Seymour Stedman and George H. Wilkins, were made parties defendant to the bill, as trustees, together with Leonard Morton & Company, a Delaware corporation and Leonard Morton & Company, an Illinois corporation. To this bill the defendants filed a general denial. The cause was heard before a chancellor of the superior court and a decree was entered in said cause, finding that the complainants had failed to prove an express contract on an account as charged in the bill of complaint and decreeing that the complainants' bill of complaint should be dismissed for want of equity.

On motion of complainants leave was given them to file an amended bill not inconsistent with the findings and rulings of the court and the order granting this leave to file an amended bill contained a proviso that the amended bill should not be based upon the theory of liability on the part of the defendants upon any express contract or account stated. Plaintiffs thereupon filed their amended bill and made as additional parties defendant, John Coe and Edward C. Kesler. Subsequently, a second amended bill was filed, upon which this present action is based, to which the defendants filed their answers denying the allegations of the bill and the cause coming on to be heard again before another and different chancellor of the superior court, a final decree was entered, after a hearing on the second amended bill and answers thereto, finding that the complainants had failed to prove the allegations of their last amended bill and that the same should be dismissed for want of equity. To review this decree this writ of error has been sued out.

From the facts it appears that on February 20, 1919, a certain common-law trust was made and executed, creating the Co-Operative Society of America, and the trustees under this trust were Harrison Parker, John Coe and N. A. Hawkenson. Under this trust money was obtained by the sale of beneficial interests. It appears that certain difficulties were encountered by the organizers in and about the sale of these beneficial interests or certificates by reason of the Blue Sky laws in various states and as a result, apparently, of this difficulty, on November 4, 1920, a certain debenture trust agreement was prepared under the direction and supervision of the complainants as contained in their bill of complaint, for the purpose of avoiding the requirements and restrictions of the Blue Sky laws in the states in which it was sought to sell the beneficial interests. Later it appears that another trust was created under the name of the Co-Operators of America, known as the Co-Operative Society of America. This was in February, 1921, and the trustees named in said trust agreement were Harrison Parker, John Coe and Viggo E. Bird. This appears to have been an effort to convey the property of the original trust by virtue of a clause therein contained to a new trust for the purpose of evading the Blue Sky laws of the various states where the beneficial certificates were being sold and apparently to avoid obligations and liabilities incurred by the original trust.

It appears further from the evidence that, as a result of their efforts in the preparation of the Co-Operative Trust of February 17, 1921, and the Debenture Trust of 1920, and services incident thereto, the complainants were paid the sum of $25,000 by Parker.

The services alleged to have been performed by the complainants, for which compensation is sought in the present proceeding, consist of directing account entries; acquiring the output of the Southern California

peach packers, the Michigan tomato canners, the Wisconsin pea canners, the Wisconsin milk canners and the organization of the General Products Trust and the preparation of contracts to co-ordinate them with a certain distributors' trust; to also see to it that the jobbers throughout the country were interested in taking the surplus output of these various enterprises, complainants also undertook to obtain control of a certain insurance company, a bank and an office building in the city of Chicago; defended law suits and attended hearings on applications for permits to operate in adjoining states; directed sales manager; advised the trustees and prepared date for suits against various parties in order to recoup losses caused by the bankruptcy of the trust; defended actions brought by attorney generals in different states against the trust and organizing subsidiary trusts and co-ordinated them by trade agreements with the parent trust.

The Articles of Trust, dated February 17, 1921, under which complainants seek to recover, named Harrison Parker, Viggo E. Bird and John Coe, or their successors, as trustees, and provided, among other things, section 46, as follows:

"All acts to be done by the Trustees, including the alienation or encumbering of real estate, may be performed by said Trustees, namely, Harrison Parker, Viggo E. Bird and John Coe, or their successors in any decree removed, who are hereby made Trustees when duly nominated and confirmed as herein elsewhere provided. All parol contracts when in writing or partly in writing may be signed by any two of said Trustees. Any verbal contract made in the *ordinary course* of the trust business by any one of said Trustees shall be good and sufficient to bind the trust estate."

Section 48, provides:

"The trustees are authorized to employ all necessary or proper agents, servants, brokers, attorneys,

employees and counsel to carry into effect the purpose of the trust herein created. * * * To contract for and on behalf of said trust estate; to bind the same and its property to the performance of such contracts. * * * ''

Section 49, provides:

''The Trustees shall in their own names as Trustees of said estate, doing business as The Co-Operators of America, bring any suit or action which in their judgment shall be necessary or proper to protect this estate or to enforce any contract made for the benefit thereof, and to defend in their discretion any suit or action against this estate or against the Trustees thereof. * * * The said Trustees are expressly authorized to bring or defend such suit in their discretion or to compromise or settle any suit, claim or controversy in which said estate is interested. * * * ''

It is not contended, nor is there any evidence as to the fact, that there was any written agreement between the complainants and the trustees of the defendant trust, nor is it contended that there was any agreement on behalf of the common-law trust, defendant herein, with the complainants, other than the verbal agreement with Parker, one of the then trustees. In fact the evidence is clear that the only agreement or contract that complainants had, if any, with the defendant trust was by reason of a verbal employment by Parker and no amount was fixed or agreed upon; no writing of any kind entered into. It is contended by complainants that the trustee Parker, under the Articles of Trust, had express power to make the verbal contract with complainants and that the contract so made was acquiesced in by reason of the conduct of the other trustees. Section 46 of said Articles of Trust provides that any verbal contract made in the ordinary course of the trust business can be made by one trustee but, after an examination of the evidence on behalf of the

complainant as to the amount and character of the work claimed to have been done, we are inclined to the view that the services were not only not ordinary services, but were of an exceedingly extraordinary character.

Section 48 of said Articles of Trust contains the provision that the trustees (plural) are authorized to employ all necessary or proper agents, servants, brokers, attorneys and counsel to carry into effect the purpose of the trust and to contract for and on behalf of said trust estate.

The original trust agreement of February 20, 1919, provided that the assets and business of the trust should be in charge of three trustees and gave them collectively full control and management of the estate. Section 48 of the Articles of Trust, already referred to, in our opinion required the collective action of the trustees in such matters as are alleged to have been performed by the complainants. There was no meeting of the trustees or any express approval by them collectively in regard to the employment of the complainants, Sykes and Ort.

The creation of such a trust necessarily involved the rights of the beneficiaries thereunder and trustees, accepting the obligation as such, are required to exercise that right with strict conformity to the trust agreement and with the utmost regard to the beneficiaries of said trust agreement. Nor can a trust be bound because it has certain benefits of, or by reason of, any contract or agreement upon a question of implied liability. The character and extent of the work claimed to have been done by complainants would indicate that they were men of experience, one of whom was a lawyer and familiar with this rule. If they had exercised the slightest care they would have required a written agreement from the trustees passed at a regular and proper meeting, for the purpose of so entering into

such an agreement or contract. A case very similar to that at bar is the case of *Austin v. Parker,* 317 Ill. 348. This action involves the same trust agreement and the same trust property and the court in its opinion says:

"In this case it does not appear by the bill or the evidence offered that either Parker, or he and his co-trustees, Hawkenson and Coe, stipulated with Austin that the trust estate should be bound. Both Parker and Coe testified there was no meeting of the trustees or act ratifying or authorizing the negotiations with Austin and that the trustees, made no contract with Austin. The contract between Parker and Austin was that Austin was to be president of the new insurance corporation when taken over. There was no contract by which either Parker, the trustees or the estate agreed to pay Austin any sum of money for his services. The only ground, therefore, upon which Austin could recover anything from anybody for his services is that there was an implied promise to pay him a reasonable fee. The circuit and Appellate Courts held the estate liable on *quantum meruit* under an implied liability arising because the estate got the benefit of his contract. The evidence does not show an express ratification of this contract by the trustees. There was no agreement sufficient to charge the estate before the work was done. The most that could be said of the contract was that it was a charge against Parker or the trustees personally or individually."

In the case at bar it is attempted to show by the agreement with Parker that he undertook to bind the property of the trust, but in the view we take of this instrument and the protection which the courts have accorded beneficiaries, we do not feel that this would, in any way, affect the rule that the actual, positive participation of all the trustees would be required in order to create an agreement sufficient to charge the estate with the value of the services.

The Supreme Court of this State in the case of *Dingman v. Boyle,* 285 Ill. 144, in its opinion says:

"Where there are several co-trustees, they all form, as it were, one collective trustee, therefore they must perform their duties in their joint capacity, even in making a purchase. In law there is no such person as an acting trustee apart from his co-trustees. All who accept the office are acting trustees."

In the view we take of this proceeding, it is not necessary to consider the charge of the defendants that the complainants are in court with unclean hands. The cause appears to have been twice heard and by two different chancellors, both of whom had an opportunity of seeing and hearing the witnesses and weighing their testimony and both of whom have found adversely to the complainants as to the evidence. In this opinion we have not considered it necessary to weigh that evidence because of the fact that, from our conclusions of the law, based upon the interpretation of the facts by the complainants, we are of the opinion that no such contract has been proven as is sufficient to bind the trust estate.

For the reasons stated in this opinion the decree of the superior court is affirmed.

*Decree affirmed.*

HOLDOM, P. J., and TAYLOR, J., concur.