Patricia Ann JACKSON, et al. *v.* Dale BRADEN, et al.

86-56                                      717 S.W.2d 206

Supreme Court of Arkansas
Opinion delivered October 13, 1986
[Rehearing denied November 17, 1986.]

*Peel & Eddy*, for appellants.

*Hardin, Jesson & Dawson*, and *Robert E. Irwin*; and *Street & Kennedy*, by: *Alex G. Street*, for appellees.

ROBERT H. DUDLEY, Justice. The assets of the estate of Bob

Bailey, Sr. included mineral interests. The executor of the estate filed a petition in probate asking authority to lease thirty mineral acres to some of the appellees and to sell ten mineral acres to other appellees. The probate court authorized the sale and the leases but there were no appraisals of the mineral interests, no reports of the leases or sale, and no confirmation of the leases or sale. Appellants are named beneficiaries in the will. In 1979, after the sale and leases, the executor issued each appellant a check written on the Bob Bailey Estate Account in the amount of $1,180.00 with the notation: "For one-fifth interest in one-half interest in sale of oil and gas interest in 10 acres and lease of 30 acres." Each of the appellants endorsed and cashed his or her check. In 1982, production was commenced on a high volume gas well which had been drilled on a part of the mineral acreage.

In April 1982 appellants filed a petition in probate alleging there "was no appraisal prior to sale, no reason for the sale, mineral interests were not assets in the hands of the executor, there was no report of sale or order of confirmation of sale, no notice of filing of petition for sale or lease. . . ." and asking the court to refuse to confirm the sale and leases. Shortly thereafter, the appellants filed a complaint in chancery asking that the conveyances to appellees be set aside as a cloud on the title of the mineral interests owned by the estate.

After consolidating the cases for trial, the trial court found: (1) by accepting and cashing the checks with the detailed notations, the appellees ratified the action of the executor; (2) the executor leased and sold the mineral interests under a power of sale contained in the will; (3) the leases and sale were a valid exercise of the trustee's authority. We affirm the trial court on the first ground and do not find it necessary to discuss the other two grounds.

Since there was no confirmation in accordance with Ark. Stat. Ann. § 62-2719 (Repl. 1971), the sale and leases of the mineral interests were not completed and binding, and their validity could be questioned in this case. *Bell* v. *Green*, 38 Ark. 78 (1881). However, the probate judge held that the appellants could not question the transactions because they had ratified them. We affirm the result, but for a different reason.

The appellees contend that the detailed notations on the

estate checks showed that the appellants had full knowledge of the act of their agent, the executor, and, after receiving the benefits of such acts, cannot deny the agency but, instead, must be held to have ratified the act. They cite principal-agent cases in their argument. The trial judge accepted the argument as the basis of his decision. We reject the particular argument since there is a fundamental difference between an executor and an agent. An executor acts in his own name and directly parts with possession and control of the property, while an agent represents someone else, the principal, who normally has possession and control of the property. *See* 76 Am. Jur. 2d *Trusts* § 6 (1975). A principal can ratify the representations the agent makes on his behalf, but an executor does not make any representations on behalf of anyone else. Since the executor makes no representation on behalf of the heirs, there is nothing for them to ratify. Rather, we understand the rule to be that an heir who knowingly accepts and retains purchase money from a sale by a personal representative may be estopped from later attacking the sale, provided that, when he received the money he was aware of the facts surrounding the sale and consented to it.

■■ Here, the detailed notations on the checks caused appellees to know, or to have sufficient facts to be put on notice, of the transaction and that, coupled with their cashing of those checks, shows an acquiescence in the sale and leases. That notice and the acquiescence from 1979 to 1982, when gas production was commenced, are sufficient to estop appellants from invalidating the sale and leases of the mineral interests. In *Pope* v. *Pennzoil Producing Co.*, 288 Ark. 10, 701 S.W.2d 366 (1986), we pointed out that parties claiming an interest in oil and gas properties must show the utmost diligence. In that case we wrote:

> We have consistently held that oil and gas properties are unusual and require diligence on the part of parties claiming a property interest. *Walker-Lucas-Hudson Oil Co.* v. *Hudson*, 168 Ark. 1098, 272 S.W. 836 (1925). In *Sanders* v. *Flenniken*, 180 Ark. 303, 21 S.W.2d 430 (1929), this court cited with approval the following language from *Patterson* v. *Hewitt*, 195 U.S. 309 (1904):

> > There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A

location which today may have no salable value may in a month become worth millions. Years may be spent in working such property, apparently to no purpose, when suddenly a mass of rich ore may be discovered from which an unusual fortune is realized. Under such circumstances, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced.

Accordingly, on the basis of estoppel, we affirm the action of the trial judge in dismissing appellants' petition in probate and complaint in chancery.

On cross-appeal it is argued that the appellant (cross-appellees) violated a "no contest" clause in the will by filing these actions, and they should be excluded from participation in the estate. The argument is without merit.

The will contains a clause which prohibits attacks upon the will and further provides that if any beneficiary should attack the will, that beneficiary should be barred from receiving any benefits from the will. Such a clause is valid in Arkansas. *Lytle* v. *Zebold*, 235 Ark. 17, 357 S.W.2d 20 (1962). But here, the appellants were not attempting to defeat the will. In fact, the time to file a will contest had lapsed long before these suits were filed. Ark. Stat. Ann. § 62-2114 (Repl. 1971). The appellants acknowledged the validity of the will and, rather than attacking it, were questioning the actions of the executor for not complying with the probate code.

Affirmed on direct appeal. Affirmed on cross-appeal.